United States District Court
Southern District of Texas
**ENTERED**
August 05, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUY GROS and ELIDA CERVANTES-GROS, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1138 |
| | § | |
| WALKER COUNTY HOSPITAL, | § | |
| CORPORATION D/B/A HUNTSVILLE | § | |
| MEMORIAL HOSPITAL, | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM, RECOMMENDATION, AND ORDER**</u>

Pending before the court[1] is Defendant Walker County Hospital Corporation d/b/a Huntsville Memorial Hospital's ("Defendant" or the "Hospital") Motion to Dismiss (Doc. 21) and Motion to Strike Plaintiffs' Surreply to Defendant's Motion to Dismiss (Doc. 26). The court has considered the motion, the response, the reply, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED in part** and **DENIED in part**.

## I. Case Background

Plaintiffs Guy Gros ("Mr. Gros") and Elida Cervantes-Gros ("Mrs. Cervantes-Gros") (collectively the "Plaintiffs") filed this lawsuit against Defendant, alleging violations of 42 U.S.C. 1983 ("Section 1983"), defamation per se, and breach of contract.

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  <u>See</u> Doc. 6, Ord. Dated May 17, 2017.

A.   __Factual Background__

On February 18, 2013, Defendant hired Mr. Gros as its Chief Financial Officer ("CFO").[2]  On May 1, 2013, Defendant and Mr. Gros entered into an employment agreement for a twenty-five-month period.[3]  On February 1, 2014, Mrs. Cervantes-Gros was hired by Defendant as a wound care physician.[4] Defendant and Mrs. Cervantes-Gros entered into a three-year employment agreement.[5]

On July 1, 2015, Defendant provided Mr. Gros a three-year contract (the "Contract") to continue his employment as the Hospital's CFO.[6]  Under the Contract, Defendant could terminate Mr. Gros's employment "for cause."[7]  The Contract defined "cause" to include "gross negligence in the performance of the Executive's Duties" and "willful violation of the Hospital's Code of Conduct."[8]

According to Plaintiffs, at some point during the course of his employment, Mr. Gros "began to raise financial concerns about [the Hospital]."[9]  He reported to Defendant that it had been operating

---

[2]      See Doc. 1, Pls.' Orig. Compl. ¶ 6.

[3]      See id.

[4]      See id. ¶ 7.

[5]      See id.

[6]      See id. ¶ 6.

[7]      See id. ¶ 14.

[8]      See id.

[9]      See id. ¶ 8.

2

at a deficit and criticized its spending and use of funds.[10] Specifically, Mr. Gros alleges that he told Defendant that due to its budget constraints, its financial decisions were "not appropriate," "wasteful," and "reckless."[11]  He warned Defendant that it "was soon going to be in large debt," and that "management would not listen to his suggestions."[12]

In November 2016, Mr. Gros was asked to "present a speech on behalf of [the Hospital] at a Veteran's Day program on November, 11, 2016."[13]  Plaintiffs allege that after Mr. Gros had prepared his speech, he was later informed that the Hospital's Chief Operating Officer ("COO"), Dawn Thompson ("Ms. Thompson"), would give the speech instead.[14]  Mrs. Cervantes-Gros subsequently sent a text to an employee at the Hospital inquiring about "why the [speaker] change would occur when it did."[15]   Plaintiffs contend that Defendant retaliated against them in response.[16]  Specifically, Plaintiffs allege that Ms. Thompson "berated [Mrs. Cervantes-Gros] about her inquiry on her husband's speech being taken away."[17]  On

---

[10]     See id.

[11]     See id.

[12]     See id.

[13]     See id. ¶ 9.

[14]     See id.

[15]     See id. ¶ 11.

[16]     See id.

[17]     See id. ¶ 12.

November 16, 2016, Mrs. Cervantes-Gros complained to Human Resources about the incident with Ms. Thompson.[18]   Plaintiffs alleged that the Human Resources department "made assertions that Mrs. [Cervantes-] Gros had been the instigator of the dispute and problems," and closed the investigation shortly thereafter.[19]

On December 2, 2016,[20] Mr. Gros was terminated.[21]   Defendant presented Mr. Gros with a notice of termination (the "Notice") informing him that his employment was being terminated "for cause."[22]   The Notice defined cause as, "lack of recognition and respect for the duties and obligation of an officer of the Hospital," "engaging in conduct inconsistent with [the Hospital's] core values," and "serious violations of [h]ospital policies."[23] According to Mr. Gros, he had "no outstanding issues" with the Hospital until he began to raise concerns about Defendant's financial decisions.[24]   Mr. Gros contends that he was fired, not "for cause," but in retaliation for his remarks about the company's

---

[18]   See id.

[19]   See id. ¶ 13.

[20]   The court assumes that the date of Mr. Gros's termination was December 2, 2016.  In paragraph 6 of their complaint, Plaintiffs list the date of termination as December 2, 2016.  In paragraph 13, Plaintiffs list the date of termination as December 12, 2016.

[21]   See Doc. 1, Pls.' Original Compl. ¶ 6.

[22]   See id. ¶ 13.

[23]   See id.

[24]   See id. ¶ 8.

financial status.[25]   On January 31, 2017, Mrs. Cervantes-Gros's
contract ended as per the contract's original terms.[26]  Her contract
was not renewed.[27]

Plaintiffs allege that after Mr. Gros's termination and the
non-renewal of Mrs. Cervantes-Gros's contract, employees of the
Hospital defamed Plaintiffs.  Specifically, Mr. Gros alleges that
(1) the Hospital's Chief Executive Officer ("CEO"), Shannon Brown
("Mr. Brown"), defamed him by stating to a member of an
unidentified board, that "[h]e did something illegal, something he
should not have"; (2) the Hospital solicited negative information
about him from the hospital staff thus damaging his reputation; and
(3) Ms. Thompson falsely accused him of sexual harassment.[28]

## B.  <u>Procedural Background</u>

On April 13, 2017, Plaintiffs filed this action against
Defendant, alleging retaliation based on Mr. Gros's protected
speech, defamation per se, and breach of Mr. Gros's employment
contract.   On June 6, 2017, Defendant "asserted that it was
entitled to arbitration of Plaintiffs' claims."[29] Plaintiffs agreed
to arbitration and to pay the initiation fee contingent upon

---

[25]     See <u>id.</u> ¶ 17.

[26]     See <u>id.</u> ¶ 7.

[27]     See <u>id.</u>

[28]     See <u>id.</u> ¶ 18.

[29]     See Doc. 11, Pls.' Mot. to Reinstate and Req. for Sanctions. ¶ 2.

Defendant's payment of the remainder of the arbitration costs.[30]
On June 15, 2017, the court dismissed the case in favor of
arbitration.[31]  Defendant subsequently failed to pay the arbitration
expenses.  On November 2, 2018, the court reopened the case.  On
December 13, 2018, Defendant filed a motion to dismiss Plaintiffs'
claims.[32]  On February 28, 2018, Plaintiffs filed a response to
Defendant's motion to dismiss.[33]  On March 5, 2019, Defendant filed
a reply to Plaintiffs' response.[34] On March 12, 2019, Plaintiffs
filed a surreply to Defendant's motion to dismiss. On March 15,
2019, Defendant filed a motion to strike Plaintiffs' surreply.[35]

## II.  Legal Standard

Pursuant to Rule 12(b)(6), dismissal of an action is
appropriate whenever the complaint, on its face, fails to state a
claim upon which relief can be granted.  When considering a motion
to dismiss, the court should construe the allegations in the
complaint favorably to the pleader and accept as true all well-pled
facts.  Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th Cir.
2010).

---

[30]    See Doc. 25, Pls.' Surreply to Def.'s Mot. to Dismiss. p. 2.

[31]    See Doc. 10, Ord. Dated June 15, 2017.

[32]    See Doc. 21, Def.'s Mot. to Dismiss.

[33]    See Doc. 22, Pls.' Resp. to Def.'s Mot. to Dismiss.

[34]    See Doc. 24, Def.'s Reply to Pls.' Resp. to Mot. to Dismiss.

[35]    See Doc. 26, Def.'s Mot. to Strike Pls.' Surreply to Def.'s Mot. to
Dismiss.

6

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

### III. Analysis

Defendant argues that Plaintiffs have failed to state a valid Section 1983 First Amendment retaliation claim.[36] Defendant also moves to dismiss Plaintiffs' defamation per se claims on the grounds that Plaintiffs have failed to plead the claims with the requisite level of specificity and that Mr. Gros's claim is barred by the Texas Citizens Participation Act ("TCPA").[37] Lastly, Defendant argues that Mr. Gros "fails to plead facts showing that

---

[36]    See Doc. 21, Def.'s Mot. to Dismiss.

[37]    See id. at pp. 2-3.

[the] Hospital breached any obligation toward him."[38]

## A.   **Section 1983 First Amendment Retaliation Claim**

To establish a Section 1983 First Amendment retaliation claim, a plaintiff must prove that "(1) an adverse employment action was taken; (2) speech involving a matter of public concern was uttered; (3) the employee's interest in speaking outweighs the employer's interest in efficiency; and (4) the protected speech precipitated the adverse employment action."   Angel v. La Joya Indep. Sch. Dist., 717 F. App'x 372, 376 (5th Cir. 2017) (unpublished) (citing McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007)). The court focuses on the second element, whether Mr. Gros alleged that he spoke on a matter of public concern.

The First Amendment protects speech made by public employees in circumstances only where they are speaking as citizens on matters of public concern. Garcetti v. Ceballos, 547 U.S. 410, 422 (2006) (holding that a a deputy district attorney's disposition memorandum was written pursuant to his employment duties and therefore lacked First Amendment protection).  The Fifth Circuit has adopted the Seventh Circuit's analysis of Garcetti, noting that "before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job." Davis v. McKinney, 518 F.3d 304, 312 (5th Cir. 2008) (citing

---

[38]     See id. at p. 10.

Mills v. City of Evansville, 452 F.3d 646, 647 (7th Cir. 2006)).
"Only when government penalizes speech that a plaintiff utters 'as
a citizen' must the court consider the balance of public and
private interests, along with other questions posed by Pickering."
See id. Therefore, the first inquiry is whether Mr. Gros's speech
about the Hospital's financial issues was made in his capacity as
a citizen or as the Hospital's CFO.

To determine the capacity in which a public employee's speech
was made, courts consider the employee's job duties, to whom the
speech was made, whether the speech was required by the employer,
and the employee's knowledge on the subject.  See Garcetti, 547
U.S. at 422;  Pickering v. Bd. of Educ. Of Township High Sch., 391
U.S. 563, 570 (1968); Davis, 518 F.3d at 313; Williams v. Dallas
Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007).  However, a
public employee's "formal job description" and whether he "speak[s]
on the subject matter of [his] employment" are not dispositive.
See Garcetti 547 U.S. at 424; Williams, 480 F.3d at 692.

The court agrees with Defendant that Mr. Gros's speech was made
in the course of performing his job as the Hospital's CFO because
making statements about the Hospital's finances is inherently part
of a CFO's job.  In support of their contrary position, Plaintiffs
rely on the holding in Lane v. Franks 573 U.S. 228, 238 (2014).
There, the plaintiff alleged that his employer, a community
college, retaliated against him after he testified in a criminal

prosecution of a state legislator who had been charged with mail fraud and theft of federal funds related to the legislator's employment at the college. See id. at 232-33. The employee was subpeonaed to testify about his reasons for terminating the legislator's employment. See id. at 233. In holding that the employee's testimony was made in his capacity as a citizen and was thus protected, the court noted the "nature of sworn judicial statements" and explained that "[a]nyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." See id. at 238; see also Anderson v. Valdez, 845 F.3d 580, 597 (5th Cir. 2016) (finding that a public employee's speech made in an effort to report judicial misconduct was made as a citizen because "[a]ll lawyers, not just lawyers who are public employees, have a duty to report malfeasance").

Unlike in Lane, Mr. Gros's speech did not have any relation to allegedly illegal activity and was not compelled by a subpoena.[39] Indeed, Mr. Gros did not allege any type of illegal actions taken by the Hospital.[40] Mr. Gros admitted that his speech constituted mere "suggestions" to the Hospital.[41] Using knowledge that he gained from his position as the Hospital's CFO, and in furtherance of that position, Mr. Gros determined that the Hospital's actions

---

[39] See Doc. 1, Pls.' Original Compl. ¶ 8.

[40] See id.

[41] See id.

were "wasteful," "not appropriate," and "reckless."[42]  He warned the Hospital that it would soon be operating at a deficit.[43]

In _Williams_, an athletic director of a public high school sent a letter to his principal and the school's office manager requesting information about the use of funds collected at athletic events.  _Williams_, 480 F.3d at 690.  His letter included criticism about how the school allocated their funds.  _Id._ at 694.  The court reasoned that, while the speech was not required by his employer, the speech was made in the course of his employment because he needed financial information and the funds to run the athletic department.  _Id._ at 694; _see also_ _Rayborn v. Bossier Parish Sch. Bd._, 881 F.3d 409, 418 (5th Cir. 2018) (determining that while a school nurse's job did not require the speech at issue, her speech was made pursuant to her official responsibilities and was within the scope of her duties).

The _Williams_ court found that the athletic director's memo reflected his "special knowledge" and "authority" about the public entity's financial situation.  _Id._ at 694.  Like the athletic director in _Williams_, Mr. Gros's concerns about the Hospital's spending, use of funds, and budget constraints, reflected his special knowledge of the Hospital's financial status by virtue of

---

[42]   _See_ _id._

[43]   _See_ _id._

11

his position as CFO.[44]   The complaint clearly alleges that Mr. Gros's complaints related to his position as CFO.

Lastly, the court must consider whether the speech at issue was made to individuals within the company or to the public.  See Davis v. McKinney 518 F.3d 304, 314 (5th Cir. 2008); Williams, 480 F.3d at 694.  If the speech was made internally, it weighs against a finding of protected speech.  See Williams, 480 F.3d at 693.

In Davis v. McKinney, the plaintiff was an audit manager at the University of Texas Health Science Center.  Davis, 518 F.3d at 307.  The court found that her complaints to her supervisor and to the university's president concerning her perception of the university's "inadequate response" to her audit findings of wrongdoing within the university was "clearly made as an employee."  Davis, 518 F.3d at 315; but see Pickering, 391 U.S. at 569-70 (finding that a teacher's letter to a newspaper editor were not directed toward any person with whom the teacher would normally be in contact in the course of his daily work as a teacher).  The Fifth Circuit elaborated, "the letter related to her work within the internal audit department and to her core job description."  Id.  Specifically, the unprotected speech was made "up the chain of command seeking redress for what [the employee] felt was an inadequate response to the findings of her investigation."  Id.

Here, by alleging that the Hospital "got tired" of hearing of

---

[44]   See id.

12

his financial warnings, Mr. Gros has admitted that he directed his comments internally.[45]

Because the plain language of the complaint defeats the second element of Mr. Gros's First Amendment retaliation claim, the court proceeds no further.  Mr. Gros has failed to allege a Section 1983 First Amendment retaliation claim.

Mrs. Cervantes-Gros did not engage in protected speech and only makes a First Amendment retaliation claim based on Mr. Gros's speech.[46]  For the reasons stated above, Mr. Gros's speech is not protected.  Therefore, Mrs. Cervantes-Gros does not have a derivative First Amendment retaliation claim.

For these reasons, Defendant's motion to dismiss Plaintiffs' Section 1983 First Amendment retaliation claims should be **GRANTED.**

**B.** **Plaintiffs' Defamation Per Se Claims**

Defendant argues that dismissal of Plaintiffs' defamation per se claims is proper because Plaintiffs failed to allege facts sufficient to state claims for defamation.  To state a defamation claim under Texas law, a plaintiff must plead facts showing that the defendant "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with . . . negligence if the plaintiff was a private individual, regarding the truth of the statement."  Copeland v. State Farm Ins., 657 F. App'x 237, 240 (5th

---

[45]     See id.

[46]     See Doc. 22, Pls.' Resp. to Def.'s Mot. to Dismiss. p. 6.

Cir. 2016) (unpublished) (citing WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998)); see also D Magazine Partners, L.P. v. Rosenthal, 529 S.W.3d 429, 434 (Tex. 2017).  Under the first element, the publication of defamatory statements may be communicated "orally, in writing, or in print to some third person who is 'capable of understanding their defamatory import and in such a way that the third person did so understand.'" Exxon Mobil Corp. v. Rincones, 520 S.W.3d 573, 579 (Tex. 2017) (citing Austin v. Inet Techs., Inc., 118 S.W.3d 491, 496 (Tex. App.–Dallas 2003, no pet.).  A defendant is negligent if it "knew or should have known a defamatory statement was false," unless the statement would not "warn a reasonabl[y] prudent [person] of its defamatory potential." D Magazine Partners, L.P., 529 S.W.3d at 440 (citing Foster v. Laredo Newspapers, Inc., 541 S.W.2d 809,820 (Tex. 1976)).

Additionally, for a defamation claim to rise to the level of defamation per se, the allegedly defamatory statements at issue must be "so obviously hurtful that they require no proof that they caused injury in order for them to be actionable." Fiber Sys. Int'l v. Roehers, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing Columbia Valley Reg'l Med. Ctr. v. Bannert, 112 S.W.3d 193, 199 (Tex. App.–Corpus Christi 2003, no pet.).

### 1. **Mr. Gros's Defamation Per Se Claim**

Mr. Gros alleges the following: (1) Mr. Brown defamed him by stating to a member of an unidentified board that "[h]e did

something illegal, something he should not have"; (2) the Hospital solicited negative comments about him; and (3) Ms. Thompson falsely accused Mr. Gros of sexual harassment.[47]   The court will analyze each of these statements.

In the first statement, Mr. Gros sufficiently asserts a defamation per se claim.   Mr. Gros alleged that Mr. Brown communicated to, or published, statements regarding alleged illegal actions taken by Mr. Gros without regard for the truth of the matter asserted.   See D Magazine Partners, L.P., 529 S.W.3d at 439 (finding that "[b]ecause the article could reasonably be construed to accuse [the plaintiff] of committing a crime, it is defamatory per se").

As to the second statement, Mr. Gros failed to sufficiently plead a defamation per se claim regarding the Hospital's alleged solicitation of negative information about him, as he did not identify any defamatory statements that were made by anyone. Instead, Mr. Gros merely states that Defendant's interrogation of hospital staff damaged his reputation.[48]

Considering the third statement, Mr. Gross alleged that Ms. Thompson communicated that, "Mr. Gros harassed and had sex with Mr. [sic] Dawn Thompson."[49]   Mr. Gros sufficiently pled facts that Ms.

---

[47]   See Doc. 1, Pls.'s Original Compl. ¶ 18.

[48]   See id.

[49]   See id.

Thompson published a false statement that he had sexually harassed her and had sex with her, possibly implying sexual conduct without consent, a crime.  Because the court must resolve all conflicts in the evidence in favor of Plaintiffs at this stage, the court finds that Mr. Gros has sufficiently alleged defamation per se claims based on the first and third statements.

### 2.   Defendant's TCPA Defense

Defendant moves to dismiss Mr. Gros's defamation claim regarding Mr. Gros's alleged sexual harassment on the grounds that it "relates to [the] Hospital's right of free speech" and should be dismissed under the TCPA.[50]  The court disagrees.

The TCPA allows a defendant in some defamation lawsuits to dismiss claims against it if the claim is based on, relates to, or is in response to a party's exercise of the right of free speech.  Cuba v. Pylant, 814 F.3d 701, 707 (5th Cir. 2016).  The TCPA requires courts to engage in a burden shifting test.  "Except as provided by Subsection (c). . . a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of evidence that the legal action. . . is in response to the party's exercise of. . . the right of free speech."  Tex. Civ. Prac. & Rem. Code § 27.005.  The TCPA allows courts to consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."

---

[50]    See Doc. 21, Def.'s Mot. to Dismiss. p. 8.

16

Tex. Civ. Prac. & Rem. Code § 27.006.

The Fifth Circuit has previously assumed without deciding that it may hear a motion to dismiss based on the TCPA. See <u>Cuba v. Pylant</u>, 814 F.3d at 706. However, even if the court were to agree with Defendant's assertion that the TCPA is applicable here, Defendant has failed to meet its burden of proof under the TCPA.

The TCPA requires the court to analyze defamation allegations based on the pleadings and opposing affidavits. Defendant has not attached any affidavits or exhibits to show by a preponderance of the evidence that the present suit is in response to Ms. Thompson's exercise of free speech.[51] Thus, Defendant has failed to show by a preponderance of evidence that Mr. Gros's action was in response to the Hospital's exercise of its right of free speech.

### 3. **Mrs. Cervantes-Gros's Defamation Per Se Claim**

Mrs. Cervantes-Gros also alleges that she was defamed by the Hospital.[52] Specifically, Mrs. Cervantes-Gros alleges that the Hospital's Human Resources department's "made assertions that [she] had been the instigator of the [Veteran's Day] dispute and problems."[53] Even if the court accepts Mrs. Cervantes-Gros's factual allegations as true, these statements are not defamatory per se. See <u>Main v. Royall</u>, 348 S.W.3d 381, 390 (5th Cir. 2011)

---

[51]   See Doc. 21, Def.'s Mot. to Dismiss.

[52]   See Doc. 1, Pls.' Orig. Compl. ¶ 22.

[53]   See <u>id.</u> ¶ 13.

17

(holding that statements that "(1) unambiguously charge a crime. . . or general depravity, or (2) are falsehoods that injure one in his office, business, profession or occupation" are not actionable per se); Bedford v. Spassoff, 520 S.W.3d 901, 904 (Tex. 2017) (holding that a Facebook post containing accusations of an extramarital affair was not defamation per se). Mrs. Cervantes-Gros failed to plead a cause of action for defamation per se. Defendant's motion to dismiss Mrs. Cervantes-Gros's defamation per se cause of action should be **GRANTED.**

## C.   <u>Breach of Contract</u>

Mr. Gros alleges that Defendant breached his employment contract by terminating him without cause.   Defendant moves to dismiss Mr. Gros's breach of contract claim on the grounds that Mr. Gros failed to plead facts showing that the Hospital breached any obligation toward him.[54]

A plaintiff must prove the following elements for a successful breach of contract claim under Texas law: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009) (citing Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.-Houston [14th Dist.] 2005, pet. denied)).   Defendant has not disputed that

---

[54]     <u>See</u> Doc. 21, Def.'s Mot. to Dismiss.

it entered a valid contract with Mr. Gros and that Mr. Gros performed under the Contract.[55]   Therefore the court will analyze only the third and fourth elements.

The court begins with consideration of the third element.  Mr. Gros alleges that Defendant breached the contract when it terminated him without cause.[56]   Mr. Gros alleges that Defendant terminated his contract after he "consistently raised the issue[s] of spending and the inappropriate use of funds, including the fact that [the Hospital] was soon going to be in large debt."[57] Specifically, Mr. Gros claims that Defendant terminated his employment as the Hospital's CFO because he warned the Hospital of potential financial insolvency.[58]  The Hospital's termination notice referenced some of the "cause[s]" that were listed in The Contract, including "lack of recognition and respect for the duties and obligation of an officer of the Hospital," "engaging in conduct inconsistent with our core values," and "serious violations of Hospital policies."[59]

Accepting Mr. Gros's allegations as true, Mr. Gros's statements about the Hospital's financial condition cannot be viewed as a

---

[55]     See id.

[56]     See Doc. 1, Pls.' Orig. Compl. ¶ 17.

[57]     See id. ¶ 8.

[58]     See id.

[59]     See id. ¶ 13.

"lack of recognition and respect. . . for the Hospital," "conduct [that is] inconsistent with [its] core values," or "serious violations of [its] policies."  While the court agrees that Mr. Gros's factual allegations are somewhat thin, Mr. Gros sufficiently alleges a breach of contract.

Defendant's motion to dismiss Mr. Gros's breach of contract claim should be **DENIED**.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiffs' Section 1983 First Amendment retaliation claims and Mrs. Cervantes-Gros's defamation per se claim be **DISMISSED**.  If the court adopts this recommendation, the following claims remain pending: (1) Mr. Gros's defamation per se claim for the alleged statement that he engaged in illegal activity; (2) Mr. Gros's defamation per se claim for the alleged statement regarding alleged sexual harassment; and (3) Mr. Gros's breach of contract claim.  Further, it is hereby **ORDERED** that Defendant's motion to strike Plaintiffs' surreply is **DENIED**.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings

and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 5th day of August, 2019.

_____
Nancy K. Johnson
United States Magistrate Judge

21